UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

**Case Number: 25-24736-CIV-MORENO**

JOE ONTMAN,

Plaintiff,

vs.

WELLS FARGO N.A., and DOES 1 THROUGH 5 INCLUSIVE,

Defendants.

_______________________________________/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Plaintiff Joe Ontman brings one count against Defendant Wells Fargo N.A. for common law negligence. Plaintiff alleges that he fell victim to a new, sophisticated internet fraud scam known as "Business Email Compromise" wherein Plaintiff was tricked into purchasing a luxury watch from a purported scammer. The Complaint states that Defendant Wells Fargo is liable to Plaintiff because but-for Wells Fargo's negligent conduct in allowing the fraudster to open its account contrary to Wells Fargo's internal policies and procedures, the scam would never have occurred. Because the Court finds that Defendant Wells Fargo did not owe Plaintiff, a non-customer, a duty of care, the Court grants Defendant's Motion to Dismiss Plaintiff's Complaint.

## FACTUAL BACKGROUND

Plaintiff alleges that, in July 2024, he sought to purchase a 41mm blue ceramic Royal Oak perpetual calendar watch manufactured by Audemars Piguet, a Swiss luxury watch manufacturer. Before completing the purchase, Plaintiff interacted with an unknown individual whom he alleges used a Business Email Compromise scheme to impersonate, or falsely represent an affiliation with,

Audemars Piguet. According to Plaintiff, the individual directed him to send payment for the watch to a Wells Fargo account held in the name "Audemars Piguet Inc."

The Complaint alleges that the Wells Fargo account had been opened before July 16, 2024, by an unidentified individual under the name "Audemars Piguet Inc." and was assigned account number 2543041277 ("the Account"). Plaintiff alleges that the entity associated with the Account was not the authentic Audemars Piguet and did not legally exist. He further alleges that the individual who opened the Account was not authorized to do so on behalf of Audemars Piguet. According to the Complaint, Wells Fargo requires business customers opening deposit accounts to provide personal-identification and corporate documentation as part of its customer-identification and "Know Your Customer" procedures. Plaintiff alleges that Wells Fargo nevertheless permitted the Account to be opened and subsequently maintained it.

On July 16, 2024, Plaintiff instructed TD Bank to wire $154,174.00 from his account to Wells Fargo for the purported purchase of the watch. The wire-transfer form identified the beneficiary as "Audemars Piguet Inc.," listed the beneficiary address as 1005 Northrope Drive NE, Atlanta, Georgia 30324, and identified beneficiary account number 2543041277. The form identified Wells Fargo as the receiving bank. The Complaint alleges that Wells Fargo received the funds and credited them to the Account.

Plaintiff alleges that the Account did not belong to the authentic Audemars Piguet and that the address associated with the Account did not match the beneficiary address provided in his wire instructions. He further alleges that Wells Fargo's account-monitoring procedures had identified the Account or activity associated with it as suspicious. According to Plaintiff, Wells Fargo nevertheless accepted the wire into the Account and subsequently permitted the funds to be withdrawn. Plaintiff alleges that some or all of those withdrawals may have occurred in person.

Plaintiff did not receive his watch and alleges that the $154,174.00 was instead obtained by the unidentified individual associated with the Account.

## PROCEDURAL HISTORY

After the alleged fraud, Plaintiff initiated the underlying suit. He brings a single claim against Wells Fargo for common law negligence, alleging that Wells Fargo failed to exercise reasonable care in opening, monitoring, and permitting withdrawals from the Account. He seeks to recover the $154,174 transferred to the Account.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Detailed factual allegations are not required, but a complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555 (citation omitted). The factual allegations must be enough to "raise a right to relief above the speculative level." *Id.* (citations omitted).

## DISCUSSION

Defendant argues both that Plaintiff fails to state a claim for negligence and that Plaintiff's common law negligence theories are incompatible with Article 4A of the Uniform Commercial

Code. As to negligence, Defendant contends that Plaintiff cannot allege facts establishing that Defendant owed Plaintiff a duty of care to support a claim for negligence because, as a general rule, banks do not owe a duty of care to non-customers. Plaintiff responds that Defendant owed Plaintiff a duty to exercise ordinary care and that Florida law recognizes exceptions to the general rule that a bank owes no duty of care to a non-customer.

Defendant separately argues that Plaintiff's negligence claim is preempted by Article 4A of the Uniform Commercial Code because the claim rests on allegations that Defendant should have known that the wire transfer it received was fraudulent. Plaintiff responds that his claim concerns Defendant's alleged failure to follow its own internal guidelines when opening the Wells Fargo account, rather than the mechanics of processing the wire transfer. On that basis, Plaintiff contends that his claim is not preempted by Article 4A of Florida's Uniform Commercial Code. The Court addresses each argument in turn.

## I. <u>Plaintiff's Negligence Claim</u>

To state a claim for negligence under Florida law, "a plaintiff must establish that the defendant owed a duty, that the defendant breached that duty, and that this breach caused plaintiff damages." *Fla. Dep't of Corr. v. Abril*, 969 So.2d 201, 204 (Fla. 2007). Accordingly, whether Plaintiff states a claim for negligence turns first on whether his allegations are sufficient to establish that Defendant owed him a duty of care.

Plaintiff alleges that the business account manager "either (1) failed to realize that there were material discrepancies and irregularities" in the fraudster's personal identity and corporation documents, "and/or (2) realized that there were discrepancies and irregularities in the [d]ocuments, but acted with deliberate indifference and assisted the fraudulent actor in opening the Account, because of the incentives Wells Fargo has in place for account managers

to open business accounts." (D.E. 1 ¶ 16). Plaintiff further states that after Wells Fargo opened the Account, it "submitted the federal Tax ID number . . . provided through the IRS's Tax ID number matching program, which would have identified a mismatch in the tax identification numbers associated with opening the Account." (*Id.* ¶ 17).

Plaintiff alleges that Wells Fargo recognized or should have recognized that the Account was fraudulent, but nevertheless "continued to leave the Account open and allowed the Plaintiff to wire funds into the Account despite knowing that there was no legal beneficiary associated with the Account." (*Id.* ¶ 25). Plaintiff further contends that "[d]espite actual knowledge of the mismatch between the account number and [the] beneficiary address, Wells Fargo deposited the $154,174.00 into the Account." (*Id.* ¶ 41).

**A. Defendant Did Not Owe Plaintiff, a Non-Customer, a Duty of Care**

As to the duties of care owed to him, Plaintiff asserts that "Wells Fargo breached its duty of care to [him] by failing to adhere to the requirements of [the Know Your Customer procedures] or adhering to internal policies and permitting a fraudulent account to be opened" and that "Wells Fargo failed to follow the [Know Your Customer] rules and regulations related to the Account." (*Id.* ¶¶ 56, 61). Plaintiff also alleges that "Wells Fargo . . . owed a duty of care to the Plaintiff in the state in which Individual Doe withdrew the funds from the Account." (*Id.* ¶ 63).

"Florida, like other jurisdictions, recognizes that as a general matter, 'a bank does not owe a duty of care to a noncustomer with whom the bank has no direct relationship.'" *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1094 (11th Cir. 2017) (quoting *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 225 (4th Cir. 2002)). "But there is an exception to this rule: a bank may be liable to a noncustomer for its customer's misappropriation when a fiduciary relationship exists between the customer and the noncustomer, the bank knows or ought to know

of the fiduciary relationship, and the bank has actual knowledge of its customer's misappropriation." *Id.* at 1094–95 (citing *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 232 (5th Cir. 2010)).

Here, Plaintiff acknowledges that he was a non-customer of Wells Fargo. He does not allege that a fiduciary relationship existed between himself and the fraudster. Instead, Plaintiff urges the Court to follow the Western District of Pennsylvania's reasoning in *Elkin Valley Baptist Church v. PNC Bank, N.A.*, wherein the court held that a bank owed a duty of care to a non-customer plaintiff under Pennsylvania law when the non-customer plaintiff was a victim of Business Email Compromise—the same type of fraud alleged here. 748 F. Supp. 3d 293, 301 n.6, 352 (W.D. Pa. 2024). The Court declines to do so.

In determining Florida law, federal district courts should "look to both [Florida's] Supreme Court and, where necessary, its District Courts of Appeal." *Coral Springs St. Sys. v. City of Sunrise*, 371 F.3d 1320, 1333 (11th Cir. 2004). The decision in *Elkin Valley* does not bind this Court on a question of Florida law, "[n]or is it consensus authority within its own circuit." *Gemstone Foods, LLC v. JPMorgan Chase Bank, Nat'l Ass'n*, 2026 WL 1507876, at *3 (5th Cir. May 29, 2026) (citing *Zheijiang Matrix SCM Co., LTD v. PNC Bank, Nat'l Ass'n*, No. 23-0979 2024 WL 1096534, at *4 (E.D. Pa. Mar. 13, 2024); *Chemalloy Co., LLC v. Citibank, N.A.*, 609 F. Supp. 3d 370, 377 (E.D. Pa. 2022)). The Court thus declines Plaintiff's invitation to rely on a federal district court's interpretation of Pennsylvania law to determine the scope of a duty under Florida law, regardless of whether the laws of Pennsylvania and Florida are, as Plaintiff contends, virtually identical.

Plaintiff further argues that because existing case law in this jurisdiction does not discuss the "very new incipient type of fraud scam known as 'Business Email Compromise,'" this is an

issue of first impression and the Court should therefore follow *Elkin*. (D.E. 12 at 15–16). But the novelty of the factual circumstances does not necessarily render the governing legal question—whether the bank owed Plaintiff, a non-customer, a duty of care—novel. The law applicable to Plaintiff's claim is sufficiently developed within Florida and this Circuit to permit the Court to resolve the issue by applying existing precedent to the facts alleged. That no binding decision appears to have confronted this precise fraud scam does not require the Court to look beyond the Circuit. Thus, the Court finds that Plaintiff fails, as a matter of law, to allege that Defendant owed him a duty of care.

**B. Defendant Did Not Owe Plaintiff a Duty to Follow Internal Procedures**

Plaintiff next advances two related arguments: (1) Defendant breached its duty of care by failing to follow its own internal protocols and policies; and (2) Defendant's failure to follow those protocols and policies may serve as evidence of Defendant's negligence. In Florida, however, "a party's internal rule does not itself fix the legal standard of care in a negligence action." *Mayo v. Publix Super Markets, Inc.*, 686 So.2d 801, 802 (Fla. 4th DCA 1997); *see also Biondi v. Branch Banking & Tr. Co.*, 2019 WL 13217964, at *4 (S.D. Fla. Feb. 7, 2019) (holding that because "following internal procedures is not a cognizable duty, the Court dismisses any negligence action predicated on [the bank]'s failure to follow internal procedures with prejudice"). Plaintiff therefore cannot establish a cognizable duty of care based on Defendant's alleged failure to comply with its own internal protocols and policies.

**C. Defendant Did Not Owe Plaintiff a Duty to Prevent Harm Under the 'Foreseeable Zone of Risk Test'**

Finally, Plaintiff argues that Florida law does not limit duties of care to those previously recognized by case law. Rather, Plaintiff contends that a duty may arise from several sources, including the particular facts of a case where a party's conduct creates a foreseeable zone of risk

posing a general threat of harm to others. (D.E. 12 at 9–11) (citing *Dorsey v. Rieder*, 139 So.3d 860 (Fla. 2014)). Specifically, Plaintiff contends that, given the allegations in his Complaint concerning Business Email Compromise fraud schemes, Defendant's failure to follow its internal policies and protocols when opening the Account created a foreseeable zone of risk which posed a general threat of harm to the public at large, including Plaintiff.

"However, Plaintiff 'cite[s] no case imposing a duty on a bank to prevent harm to non-customers under the foreseeable zone of risk test.'" *Herrera v. TD Bank, N.A.*, 682 F. Supp. 3d 1271, 1275 (S.D. Fla. 2023) (quoting *Kerruish v. Essex Holdings, Inc.*, 2017 WL 10457076, at *4 (S.D. Fla. Aug. 9, 2017)). And Plaintiff's reliance on the foreseeable zone of risk theory does not overcome the Florida and Eleventh Circuit authority addressing the circumstances under which a bank owes a duty to a non-customer. Thus, Plaintiff's argument that Defendant's alleged risk-creating conduct independently imposed a duty of care to Plaintiff fails.

## II. <u>Uniform Commercial Code Preclusion</u>

Defendant separately argues that Plaintiff's negligence claim is preempted by Article 4A of the Uniform Commercial Code. Because the Court concludes that Plaintiff has failed to state a claim for negligence under Florida law, the Court need not reach Defendant's alternative argument that Article 4A preempts Plaintiff's claim. Accordingly, the Court declines to address whether Plaintiff's negligence claim is preempted by Article 4A.

**CONCLUSION**

For the reasons stated above, it is

**ADJUDGED** that Defendant's Motion to Dismiss is **GRANTED.** Plaintiff's Complaint is **DIMISSED WITH PREJUDICE**. The Clerk is directed to close the case.

DONE AND ORDERED in Chambers at Miami, Florida, this 20th of August 2026.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record